```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Deborah A. Ritterbeck,            :

      Plaintiff,              :

    v.                            :     Case No. 2:11-cv-869

                                  :     JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,      Magistrate Judge Kemp

      Defendant.

<u>REPORT AND RECOMMENDATION</u>

I. <u>Introduction</u>

Plaintiff, Deborah A. Ritterbeck, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed on November 6, 2008, and alleged that plaintiff became disabled on August 13, 2008.

After initial administrative denials of her application, plaintiff was given a videoconference hearing before an Administrative Law Judge on October 19, 2010. In a decision dated December 2, 2010, the ALJ denied benefits. That became the Commissioner's final decision on August 4, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on December 15, 2011. Plaintiff filed a statement of specific errors on February 20, 2012. The Commissioner filed a response on April 24, 2012. No reply brief was filed, and the case is now ready to decide.

II. <u>The Lay Testimony at the Administrative Hearing</u>

Plaintiff's testimony at the administrative hearing is found at pages 37 through 54 of the record. Plaintiff, who was 51 years old at the time of the hearing and attended school through

the first year of college, testified as follows.

Plaintiff last worked in 2008 at a job which she began in 2004.  She was responsible for connecting elderly and disabled people to available social services.  The work mostly involved using a computer, but occasionally she would pick up baked goods or other items for her clients.  Before taking that job, she worked at The Ohio State University as a program educator and in a grant program working with young families.  She had also been employed as an activity coordinator for elderly and disabled persons.

While still working at Ohio State, plaintiff began to experience worsening of the pain in her spine, which was one reason she changed jobs in 2004.  She missed quite a bit of time at work due to pain.  She also suffers from irritable bowel syndrome and acid reflux disease, and she has trouble sleeping due to pain and spasms.  Her condition has caused her to be depressed.  She takes Valium for anxiety, Percocet for pain, and other medications for muscle spasms, irritable bowel syndrome, high blood pressure, atrial fibrillation, and hypothyroidism.  Her medications irritate her stomach.  Bad weather also affects her various conditions.

Plaintiff can walk for fifteen minutes before her back begins to spasm.  She testified that her doctors attribute this problem to degenerative disc disease, and she had a prior surgery on her neck.  Sitting is also uncomfortable.  On a daily basis, plaintiff does some minor household chores like dusting or washing dishes, but others do most of her grocery shopping.  She thought the combination of her cervical spine pain and her depression would prevent her from doing even a sedentary job.  Most of the day, she is lying down or sitting with her feet up.  She is currently receiving long-term disability benefits from a private insurer.

III.  The Medical Records

The medical records in this case are found beginning on page 290 of the administrative record.  The pertinent records can be summarized as follows.

Plaintiff had neck surgery in 2002.  The notes indicate that within three months her pain had largely resolved.  However, she was complaining of severe neck pain in 2008, as well as pain in the mid-back region and the lower back.  An EMG showed no evidence of cervical radiculopathy and she was not a candidate for neck surgery.  She did, however, have some disk degeneration adjacent to the C5-C6 fusion which was done in 2002.  X-rays taken in 2007 showed some mild degenerative changes at T3-4 and T12-L1, and a disk bulge at L5-S1 was also present, which might have been causing her some right leg pain.

Dr. Irwin, a treating source, reported on December 1, 2008 that plaintiff had diagnoses of cervical disc protrusions, chronic musculoskeletal pain, and possible ankylosing spondylitis.  She was seeing a rheumatologist as well.  Dr. Irwin reported that plaintiff could sit, stand, walk, carry and handle light objects, hear, see, speak and travel.  Lifting would be limited by chronic pain.  Her mental functioning was intact. (Tr. 357).

A mental residual functional capacity form was completed by Dr. Edwards, a psychologist, on January 17, 2009.  His ultimate conclusion was that plaintiff could perform simple and more complex tasks in a relatively static environment as long as she did not have to meet strict production quotas or deal with high-paced output demands.  He based this conclusion on a diagnosis of major depression, recurrent, which produced moderate difficulties in maintaining concentration, persistence or pace, but only mild limitations in other areas.  (Tr. 429-44).

Dr. Gahman, also a state agency reviewer, completed a

physical residual functional capacity assessment form on February 13, 2009.  He found that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, could sit, stand or walk about six hours each in a workday, and had some limitations in the areas of climbing, stooping, and crouching.  He did not believe the records supported pain and limitations of the intensity which plaintiff reported, and noted that Dr. Irwin's report supported his conclusions.  (Tr. 445-52).

Plaintiff also saw Dr. Harvey in 2009 and 2010.  His office notes (Tr. 516-26) show that she was treated for back pain which prevented her from doing "much of anything at all" and that she presented with a depressed affect as well as with anxiety and irritability.  His diagnoses appeared to include osteoarthritis of the lumbar spine, chronic pain, and chronic induced depression.  In a later report (Tr. 541-45), Dr. Harvey indicated a number of marked impairments in psychological functioning, as well as several extreme limitations (being able to react predictably to work changes and to deal with work stress), and he also limited her to less than eight hours of sitting, standing and walking during a workday, with no lifting at all.  He repeated essentially the same conclusions in a note dated September 16, 2010, describing plaintiff as suffering from "intractable neck and back pain."  (Tr. 553-54).

### IV.  The Vocational Testimony

Mr. Walker, a vocational expert, also testified at the administrative hearing.  His testimony begins at page 55 of the administrative record.  Mr. Walker characterized plaintiff's past work as a service coordinator as light and semi-skilled.  The nutritional educator job was light and skilled, although plaintiff performed it at the medium level.  Activity coordinator is a light, unskilled job, and furniture salesperson was light and semi-skilled.  Plaintiff had no skills that would transfer to

other light jobs.

Mr. Walker was asked some questions about a hypothetical person who was 51 years old, had one year of college education, and who had plaintiff's past work experience. That person could also work at the light exertional level, being able to crouch, stoop, or climb stairs only occasionally and never being able to climb ladders, ropes or scaffolds. The person also needed to avoid hazards, unprotected heights or moving machinery, and to work in a static work environment without production quotas or high-paced output demands. He testified that such a person could do the furniture salesperson, activity coordinator and service coordinator jobs. In addition, such a person could do a number of other light, unskilled jobs such as food preparation worker, waitress, cashier, and office helper. However, if plaintiff were as limited as she testified, or as limited as Dr. Harvey indicated, she could not work. The same would be true if she were off task for a third or even a fourth of the work day.

V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 12 through 20 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured status requirement of the Social Security Act through June 30, 2014. Second, he found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of August 13, 2008 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including major depression, fibromyalgia, obesity, irritable bowel syndrome, degenerative disc disease, thoracolumbar spondylosis, and hypertension. The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20

C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform the exertional requirements of light work, although she could only occasionally climb ramps and stairs, crouch or stoop, and could not climb ladders, ropes, or scaffolds. Additionally, she had to avoid exposure to hazards and was limited to work involving either simple or more complex tasks performed in a relatively static environment without strict production quotas or high-paced output demands. The ALJ accepted the vocational expert's testimony that someone with such limitations could perform three of plaintiff's past jobs. As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, plaintiff raises two issues. First, she asserts that the ALJ improperly failed to take her fibromyalgia into account when considering the combined effect of her various impairments. Second, she argues that the ALJ did not properly weigh the medical opinions from treating sources. The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based

upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

 Plaintiff's first argument focuses on her fibromyalgia. She contends that the ALJ had a duty to develop the record more fully with respect to this impairment to determine if it explained her various symptoms, and erred by failing to refer to Social Security Ruling 99-2p and by giving only scant weight to the opinion of Dr. Harvey, who treated plaintiff for this condition. This argument is coupled with the claim that the ALJ did not properly determine plaintiff's credibility, in part due to the ALJ's reliance on factors which find no support in the record and upon a list of daily activities which do not equate to the ability to work on a full-time basis. In response, the Commissioner argues that no physician ever formally diagnosed fibromyalgia during the relevant time period and that other conditions which were diagnosed, such as degenerative arthritis or ankylosing spondylitis, explained her symptoms. Further, the Commissioner defends the ALJ's credibility determination at length, contending that the various factors upon which the ALJ relied in discounting plaintiff's testimony were legitimately

considered and amply supported by the record.

Turning first to the issue concerning fibromyalgia, SSR 99-2p, which is titled "Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)," states that CFS is a medically determinable impairment and may be disabling.  It describes the criteria for defining CFS, including the fact that it "cannot be explained by another physical or mental disorder," and that at least four of eight symptoms listed in the Ruling must be present.  After discussing the various medical signs and laboratory findings that should accompany a diagnosis of CFS, the Ruling explains that, in evaluating claims involving CFS, the normal sequential evaluation process is followed, as is the standard method for evaluating the claimant's credibility.  It also notes that other types of disorders, including fibromyalgia (FMS) may share characteristics with CFS, and if one or more of those disorders are potentially present, "it may be necessary to pursue additional medical or other development."  It appears to be plaintiff's argument that because the ALJ made no specific reference to this SSR, he did not consider the combined effects of plaintiff's fibromyalgia and her other impairments.

The absence of any reference to SSR 99-2p, which is directly applicable to chronic fatigue syndrome, a condition from which plaintiff does not suffer, does not suggest to the Court that the ALJ simply disregarded the evidence concerning fibromyalgia.  It is, as the Commissioner points out, the ALJ's duty to consider the degree to which any impairment - severe or otherwise - affects a claimant's ability to perform work-related functions which is important, and plaintiff does not point to any specific limitation which she claims to have been caused by fibromyalgia but which the ALJ essentially ignored due to his alleged failure to follow the dictates of SSR 99-2p.

Plaintiff does, however, argue that the ALJ "failed to

-8-

properly consider the effects of fibromyalgia." Doc. 14, at 9. In support of this argument, she asserts that the ALJ erred in not assigning the most weight to the opinion of Dr. Harvey, who treated her for this disorder, and placing significant weight on the opinion of Dr. Gahman, the state agency reviewer. Plaintiff contends that Dr. Gahman also ignored the impact of her fibromyalgia and that the ALJ "relied upon [Dr. Gahman's] opinion without correcting this deficiency." Id. at 10.

 Plaintiff does not couch this argument in terms of the "treating physician" rule (that argument appears as a separate assignment of error), so the Court will defer discussion of that issue. In the context of this argument, the Court notes that Dr. Irwin's opinion, while it does not appear to use the term "fibromyalgia," did describe plaintiff as suffering from chronic musculoskeletal pain. Dr. Irwin believed that plaintiff could sit, stand, walk, and carry light objects, and he thought her mental functioning was normal. To the extent that some of these restrictions were caused by her generalized pain, the ALJ clearly took them into account. And so did Dr. Gahman, who referred to this condition and its limitations in his report, specifically noting that Dr. Irwin's statements "support the RFC given." (Tr. 451). Thus, to the extent that plaintiff's first statement of error asserts either that the ALJ committed a procedural miscue by not referring explicitly to SSR 99-2p or simply disregarded any evidence that plaintiff's fibromyalgia or chronic musculoskeletal pain limited her functioning, that argument is contradicted by the record.

 As noted, however, plaintiff has coupled this first argument with a general attack on the way in which the ALJ determined that her testimony of disabling symptoms was less than fully credible. Again, she asserts both procedural and substantive errors. First she contends that the template used by the ALJ reverses the

required decision-making process, allowing the ALJ to determine a residual functional capacity prior to assessing the claimant's credibility and then gauging credibility in light of the RFC determination which has already been made. Next, she argues that the ALJ relied too heavily on the opinions of Drs. Irwin and Gahman, and too little on the views of Dr. Harvey, and that the ALJ also cited to various factors which do not permit the conclusion that plaintiff was not fully credible. The Court will discuss each of these contentions separately.

Plaintiff's procedural argument relies heavily on a decision from the Court of Appeals for the Seventh Circuit, <u>Bjornson v. Astrue</u>, 671 F.3d 640 (2012), which is very critical of the standard social security template, describing it as neither meaningful nor reviewable. This Court has, in <u>Jones v. Comm'r of Social Security</u>, 2012 WL 5378850 (S.D. Ohio Oct. 30, 2012), and <u>Williams v. Astrue</u>, 2012 WL 4364147 (S.D. Ohio Sept. 24, 2012), acknowledged that decision, but held that when an ALJ, despite using the standard template, engages in a complete discussion of the credibility issue, the Court will simply review that determination to insure that it is supported by substantial evidence. The Court will do so here.

According to plaintiff, four of the reasons cited by the ALJ for discounting her testimony - dealing with her claim to suffer from irritable bowel syndrome, from severe side effects of her medications, the absence of a recommendation of surgery by Dr. Meagher, and the reasons she gave for undergoing a hysterectomy - are not "supported by either the record or common experience." She also asserts that the ALJ mistakenly equated her ability to do some activities of daily living with the ability to work on a full-time basis. The record, however, does not bear out these claims.

First, the reasons cited by plaintiff in her statement of

-10-

errors do not reflect the ALJ's entire rationale for discounting her testimony.  While the ALJ used these factors as examples of why he did not credit her testimony in full, he began his discussion of the credibility issue by noting that her "description of the severity of her pain and other limitations has been so extreme as to appear implausible ...."  (Tr. 17).  That was so, according to the ALJ, because the objective findings in the record are "minimal."  Id.  The ALJ then reviewed those findings in detail.  He also focused on the conservative nature of her treatment and the fact that she used pain medication only intermittently, and often took no medication for her psychological condition.  Although he also cited to the reasons which plaintiff's statement of errors focuses on, and plaintiff has presented plausible arguments why those seeming inconsistencies are either explainable or non-existent, the bulk of the credibility determination relied on the ALJ's perception - supported by the record - that there is a gap between the way in which various physicians described plaintiff's condition and the way she described it, and a course of treatment and medication that appears inconsistent with completely disabling symptoms.  The fact that plaintiff could also perform some routine activities of daily living is evidence which an ALJ can also consider in making a credibility determination if, again, there is some inconsistency between a claimant's testimony of debilitating symptoms and the activities she can actually perform.  In short, the credibility determination made here was within the wide discretion afforded to the ALJ on this subject, and the Court is not free to overturn it.  See generally Foreman v. Commissioner of Social Sec., 2012 WL 1106257 (S.D. Ohio March 31, 2012) (Watson, J.), citing Walters v. Comm'r of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994).

Plaintiff's second statement of error addresses the "treating physician" rule. As with her first statement of error, she has identified what she claims to be both procedural and substantive deficiencies in the ALJ's decision. She argues that the ALJ should not have relied upon Dr. Edwards' assessment of plaintiff's mental functional capacity because it was based in part on the fact that plaintiff was living independently - something which changed after he wrote his report; should have given greater weight to Dr. Harvey's opinion because he was a treating source and his views were consistent with his treatment notes; and should not have given great weight to Dr. Irwin's assessment because he only treated plaintiff for a few months after she alleged disability. She also contends that the ALJ completely (and improperly) disregarded Dr. Meagher's opinions and those opinions about her physical and mental condition fully supported her claim of disability.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the

weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. <u>Wilson v. Comm'r of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004).

    The ALJ provided a fairly detailed explanation for assigning "scant weight" to Dr. Harvey's opinions.  These reasons are set forth: (1) Dr. Harvey "gives no explanation for any conclusion"; (2) his opinion is "inconsistent with the record evidence and the undersigned's credibility determination"; (3) his records "reflect no musculoskeletal findings"; (4) it appears that he accepts the claimant's subjective complaints at face value"; (5) he saw plaintiff only five times before rendering his opinion; (6) it conflicted with Dr. Irwin's opinion, rendered only months before, concerning plaintiff's ability to sit, stand, walk, and carry light objects; and (7) it conflicted with Dr. Gahman's opinion, which, according to the ALJ, was "well-reasoned, supported by the record evidence, and consistent with the undersigned's credibility determination."  (Tr. 18).  The Commissioner argues that all of these findings are supported by the record and that a reasonable person could have accepted them as evidence that Dr. Harvey's opinion should be substantially discounted.  The Commissioner does not address specifically plaintiff's claim that Dr. Edwards' opinion was undercut by the fact that she moved in with her parents because, at least according to her testimony, she could no longer perform her usual activities of daily living, but the Commissioner's memorandum does point out that the ALJ gave reasons for according little weight to Dr. Harvey's opinion which focused on the sufficiency of the opinion itself rather than any external factor such as

whether plaintiff was or was not living independently.  Doc. 17, at 17 n.8.

 Dr. Harvey completed both a mental and a physical residual functional capacity assessment form on September 11, 2010.  He did not, on either, make any remarks other than stating on the mental capacities form that plaintiff "does better alone."  (Tr. 541.  The limitations set forth on both forms are extreme, and included a statement that plaintiff could not lift any amount of weight, could not reach overhead, and could only stand for an hour in an entire day.  Dr. Harvey also wrote a letter summarizing his findings, stating that all of plaintiff's conditions were present "since years before December 2008, and continue to this date unabated " (Tr. 555) and that plaintiff had stated to him that she could not function beyond activities of daily living except with medication which she did not want to take because it adversely affected her bowels (Tr. 553).

 The ALJ correctly noted the absence of any specific statements corroborating this assessment, as well as the absence of any treatment notes showing test results or any other objective indicia of disabling symptoms.  The only test result reported to Dr. Harvey appears to be some MRI results showing some mild degenerative changes in the spine and possible bulging disks at the T1-T3 levels, plus a letter from Dr. Chaudhari from September of 2009 indicating that the strength in plaintiff's upper and lower extremities was "normal" and that her reflexes were "symmetric and non-pathologic."  Also, her gait and station were normal and she could heel to toe walk without difficulty.  She had some degenerative changes in her spine but they were mostly mild or very mild.  Dr. Chaudhari thought her depression was her most severe condition.  Thus, the ALJ was also correct in finding that there was little or nothing by way of reports or findings to support Dr. Harvey's views.  The only detailed

statement of the reasons for plaintiff's alleged disability appear to have come from her recitations of her own situation and symptoms in office notes which clearly were reported by the plaintiff and not observed or verified by Dr. Harvey. (E.g., Tr. 520-21). The ALJ's observation concerning the relatively small number of times that Dr. Harvey saw plaintiff is also borne out by the record.

It appears that the ALJ took into account the various factors set forth in §404.153-27(d) for evaluating a treating physician's opinion, and plaintiff does not argue otherwise. When those factors are discussed, and when the record supports the ALJ's finding that the factors allow a treating source's statements to be discounted, the Court is not ordinarily entitled to second-guess that finding. See, e.g., Rabbers v. Comm'r of Social Security, 582 F.3d 647, 660 (6th Cir. 2009)(holding that an ALJ was entitled to discount a treating source opinion if it was not supported by records and treatment notes and based on relatively few instances of treatment); Collins v. Comm'r of Social Security, 2008 WL 2302695, *6 (S.D. Ohio May 30, 2008)(when reasons given for discounting opinion of treating source are supported by the record, decision to discount that opinion are within the ALJ's "'zone of choice'").

This conclusion largely resolves plaintiff's other arguments about the weight given to the opinions of Drs. Irwin and Gahman. If the ALJ was entitled to, and did, discount Dr. Harvey's opinion, and if he also found that plaintiff was not completely credible, it was within his "zone of choice" to give weight to those physicians' opinions, especially in light of the entire record, and to find that plaintiff had the physical residual functional capacity to perform a limited range of light work. The fact that plaintiff was living independently when Dr. Edwards reviewed the record is not of great significance since the ALJ

discounted her subjective claim that she could no longer do what was needed to live without assistance.  Further, Dr. Meagher's physical findings were noted by the ALJ (Tr. 17) and Dr. Meagher did not express any view as to whether plaintiff could perform any specific work-related functions.  Therefore, this assignment of error provides no basis for reversal or remand.

Plaintiff's final argument is that the ALJ erred in crediting Dr. Irwin's statements about her mental residual functional capacity.  But she notes in her statement of errors that the ALJ did not, in fact, accept these statements even though they were accorded substantial weight.  <u>See</u> Doc. 14, at 16.  Rather, the ALJ accepted the views of the reviewing mental health professionals and made a finding consistent with those views.  Plaintiff does not point out any specific restriction in her mental functioning which was supported by the record but not accepted by the ALJ, but seems to argue more generally that Dr. Harvey's view of her mental capacity should have been accepted as well.  However, Dr. Harvey is not a mental health professional, and plaintiff provides no reasons why the ALJ was required to credit his views over those of the state agency reviewers in this regard.  Thus, there is nothing in this final assignment of error which persuades the Court that a remand is needed - nor that the ALJ's decision was filled with "repeated abuses of discretion to such an extent that it amounts to a denial of due process."  Doc. 14, at 18.  The Court will therefore recommend that the statement of errors be overruled and that the decision of the Commissioner be affirmed.

## VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge