**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DEBORAH A. RITTERBECK,**

    **Plaintiff,**

    **v.**                                                  **Case No. 2:11-cv-0869**

**COMMISSIONER OF SOCIAL**                **JUDGE ALGENON L. MARBLEY**
**SECURITY,**                                         **Magistrate Judge Kemp**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the December 18, 2012 Report and

Recommendation of the Magistrate Judge. (Doc No. 18.) The Magistrate Judge recommended

that the Court affirm the decision of the Commissioner of Social Security ("Commissioner"). On

December 28, 2012, Plaintiff filed her Objections to the Report and Recommendation. (Doc. No.

169) The Commissioner has not filed a response to the objections.  For the following reasons,

Plaintiff's Objections are **OVERRULED** and the Report and Recommendation is **ADOPTED**.

I.

This case involves Plaintiff's November 6, 2008 applications for Disability Insurance

Benefits and Supplemental Security Income. Plaintiff claimed that on August 13, 2008, she

became disabled as a result of multiple medical conditions including back pain, irritable bowel

syndrome, acid reflux disease, depression, and anxiety.  She was 51 when the administrative

hearing was held in 2010.  She graduated from high school and attended college for one year.

Her relevant work history included coordinating activities and services for elderly and disabled

individuals and working as a program educator.

An Administrative Law Judge (ALJ) found that Plaintiff suffered from major depression,

fibromyalgia, obesity, irritable bowel syndrome, degenerative disc disease, thoracolumbar

spondylosis, and hypertension.  However, the ALJ also concluded that she could perform a

limited range of work at the light exertional level (with no climbing of ladders, ropes or scaffolds,

and only occasional climbing of ramps and stairs, crouching and stooping) so long as she was not

exposed to hazards and could do a job involving a relatively static work environment without

strict production quotas or high-paced output demands.  Because a vocational expert testified that

someone so limited could do Plaintiff's past work, the ALJ denied her claim for benefits.

The Magistrate Judge has recommended that the Court affirm that decision.  In her

objections, Plaintiff argues that the administrative decision is flawed because (1) the ALJ did not

specifically consider Plaintiff's diagnosis of fibromyalgia in conjunction with her other severe

impairments, and (2) the ALJ improperly weighed the opinions of Plaintiff's treating source

physician, Dr. Harvey, and did not follow proper procedures when making that judgment.  The

Court must review these claims *de novo*.  *See* 28 U.S.C. §636(b)(1)(b); Fed.R.Civ.P. 72(b).  Upon

review, the Court "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1).

## II.

When faced with an appeal from an adverse decision of the Commissioner of Social

Security, the Court's review "is limited to determining whether the Commissioner's decision 'is

supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v.

Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*,

486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . .”). Put another way, a decision supported by substantial evidence is not subject

to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*,

800 F.2d 535, 545 (6th Cir. 1986). “Substantial evidence exists when ‘a reasonable mind could

accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a

zone of choice within which the decision-makers can go either way, without interference by the

courts.’ ” *Blakley v. Comm’r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal; citation

omitted). Even if supported by substantial evidence, however, “‘a decision of the Commissioner

will not be upheld where the [Commissioner] fails to follow its own regulations and where that

error prejudices a claimant on the merits or deprives the claimant of a substantial right.’”

*Rabbers v. Comm’r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm’r of*

*Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

III.

Plaintiff first argues that the ALJ did not properly consider her diagnosis of fibromyalgia.

In particular, she contends that the ALJ was required to, but did not, “look beyond the objective

evidence” to determine how her fibromyalgia affected her ability to function.  She cites, as

support for this argument, the fact that the ALJ did not specifically mention chronic pain in his

analysis and because he found Plaintiff’s testimony concerning her functional limitations

“implausible” due to the absence of objective evidence to support that testimony.

The Report and Recommendation concluded that the ALJ did, in fact, consider plaintiff’s

chronic pain - from whatever source it was derived - in assessing her residual functional capacity.

The two sources to which the ALJ gave the most weight - Dr. Irwin, who was a treating

physician, and Dr. Gahman, a state agency reviewer - both explicitly considered chronic pain in

3

their assessment of plaintiff's physical capacity.  By adopting their findings, the ALJ also factored

any limitations caused by such pain into the residual functional capacity assessment.

Plaintiff asserts that this is an impermissible *post hoc* rationalization because the ALJ did

not couch his decision in those terms.  The Court disagrees.  It is not speculative to conclude that

the ALJ adopted the opinions of physicians who factored chronic pain into their assessments; the

administrative decision states that "substantial weight [was given] to Dr. Irwin's opinion" and it

"accords great weight to Dr. Gahman's opinion ...."  Tr. 18.  The administrative decision also

refers specifically to Dr. Irwin's diagnosis of chronic musculoskeletal pain and it quotes his

opinion that Plaintiff "does have chronic pain which limits the extent of lifting ...."  *Id*.  Finally,

as also observed by the Report and Recommendation, Plaintiff has never described what

additional limitations she believes are attributable to her fibromyalgia beyond the limitations

found by the ALJ, apart from her separate arguments that the ALJ should have accepted either Dr.

Harvey's opinion or her own testimony as more accurately defining her residual functional

capacity.  The Court will discuss each of these arguments separately, but they are different from

the argument that the ALJ simply failed to consider fibromyalgia, or chronic pain, at all.

Plaintiff also argues that the ALJ failed to follow the analytical method for fibromyalgia

cases set forth in *Rogers v. Commissioner of Social Security*, 486 F.3d 234 (6th Cir. 2007).  As

plaintiff characterizes the *Rogers* decision, in any case where there is a diagnosis of fibromyalgia,

the ALJ may not evaluate that impairment solely with reference to the objective evidence,

because the severity of fibromyalgia is generally not susceptible to measurement by objective

means, and medical evaluations which pay lip service to the diagnosis but actually rely on the

absence of objective testing cannot sustain a decision dismissing or minimalizing the symptoms

4

caused by that disease.

In *Rogers*, the claimant's long-time treating physician diagnosed her initially with rheumatoid arthritis and then with arthralgia.  He then indicated a diagnosis of fibromyalgia.  He also expressed the opinion that she could not perform the demands of even sedentary work activity.  Another treating source concurred, as did a consultative examiner.  However, two state agency physicians thought she could do medium work because they did not see any objective signs of a more debilitating condition.  A medical expert testified that based on objective evidence, the plaintiff was not disabled, but she was if her testimony as to disabling symptoms was credited.  The ALJ showed "hesitancy" in identifying fibromyalgia as a severe impairment and failed to discuss the accepted diagnostic protocol for identifying the disease.  He also based his findings solely on the opinions of non-treating sources who explicitly relied on the absence of objective documentation for disabling symptoms.  The Court of Appeals reversed, concluding that the ALJ had not articulated any valid reasons for disregarding the opinions of multiple treating sources, and noting that in a fibromyalgia case, "opinions that focus solely upon objective evidence are not particularly relevant."  *Rogers*, 486 F.3d at 245.

This case is not like *Rogers*.  One of the two opinions which the ALJ relied on was a treating source who was clearly aware of Plaintiff's chronic pain, and his opinion was not based solely on objective test results.  The same is true of Dr. Gahman.  If the ALJ discounted plaintiff's testimony of symptoms caused by chronic pain (although she testified that back spasms and neck pain, rather than more generalized fatigue, coupled with depression made her unable to work) solely because of the absence of any objective test results,  that might be problematic, but that is not what happened here.  In short, the Court finds unconvincing plaintiff's argument about the

way in which the ALJ evaluated her fibromyalgia and took it into account in arriving at an assessment of her residual functional capacity.

The final part of this argument is Plaintiff's contention that the ALJ's credibility determination was flawed because, again, that determination failed to acknowledge the fact that fibromyalgia can cause pain even though there is no objective confirmation of its severity.  That is, Plaintiff asserts that the ALJ, when he found her subjective complaints of disabling limitations not to be "plausible," was relying only on the absence of objective evidence to substantiate those complaints.  She made an associated procedural argument before the Magistrate Judge based on the decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), but does not include that argument in her objections, so the Court will not address it.

In ruling on Plaintiff's credibility argument, the Report and Recommendation noted that, indeed, the lack of objective findings was part of the ALJ's reasoning process when deciding that Plaintiff's complaints were not entirely credible, but, as discussed above, Plaintiff attributed much of her discomfort to degenerative disease of the cervical spine, a condition which does admit to objective testing, and to psychological impairments, which also are typically evaluated by an objective source.   It was certainly not error for the ALJ to compare the symptoms which Plaintiff claimed to experience from these impairments to the medical evidence in order to try to find some correlation.  The ALJ also took into account the fact that Plaintiff's various conditions were treated conservatively and that, at least for her psychological conditions, she often took no medication.  Finally, the ALJ factored in Plaintiff's activities of daily living, something which is permissible so long as the fact that a claimant is not entirely bedridden is not equated with the ability to hold a full-time job.  That error is not present here.  The Court adopts the Report and

Recommendation's reasoning on this point and finds no error in the way that Plaintiff's credibility was assessed.

IV.

Plaintiff's other objection, and her other assertion of error in her specific statement of errors, raises a more straightforward question: did the ALJ improperly weigh the medical evidence and fail to defer sufficiently to the opinions of the treating sources?  The legal contours of this argument are well-established.  As this Court has stated,

> [When] an ALJ rejects the opinions of a treating physician the ALJ must "always give good reasons in [the] notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 404.927(d)(2). Although physician opinions on issues reserved to the Commissioner are not entitled to special significance, an ALJ is still procedurally required to " 'explain the consideration given to the treating source's opinion(s) .'" *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir.2007) (quoting SSR 96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed.Reg. 34471, 34474 (Soc. Sec. Admin. July 2, 1996)). As the United States Court of Appeals for the Sixth Circuit has noted the reason-giving "requirement [ ] ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson [v. Comm'r of Soc. Sec.],* 378 F.3d [541 (6th Cir. 2004)] at 544.
>
> The Sixth Circuit has made clear that the Court should not hesitate to remand ALJ decisions "that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir.2009) (internal quotations omitted) (quoting *Wilson*, 378 F.3d at 545). As the *Wilson* Court explained, because the reason-giving requirement creates an important procedural safeguard, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." 378 F.3d at 546; *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655 (6th Cir.2009) (indicating that an ALJ's failure to give "good reasons" for rejecting a treating source opinion "would almost always require reversal and remand to Commissioner").

*Pyatt v. Commissioner of Social Sec.*, 2010 WL 3784991, *4 (S.D.Ohio Sept. 21,

7

2010)(Marbley, J.).

Plaintiff's objection consists of a two-pronged attack on the ALJ's evaluation of the treating sources. She claims it was error for him to discount Dr. Harvey's opinion for the reasons given, and that the ALJ improperly disregarded an evaluation done by Dr. Meagher. She also argues that Dr. Meagher's opinion supported Dr. Harvey's, a fact which she believes the ALJ either failed to appreciate or simply ignored. Dr. Harvey completed forms indicating that from both a mental and physical point of view, plaintiff essentially had no ability to perform any kind of work-related function.

As to Dr. Harvey's opinion, the Report and Recommendation concluded that

The ALJ correctly noted the absence of any specific statements corroborating [Dr. Harvey's] assessment, as well as the absence of any treatment notes showing test results or any other objective indicia of disabling symptoms. The only test result reported to Dr. Harvey appears to be some MRI results showing some mild degenerative changes in the spine and possible bulging disks at the T1-T3 levels, plus a letter from Dr. Chaudhari from September of 2009 indicating that the strength in plaintiff's upper and lower extremities was "normal" and that her reflexes were "symmetric and non-pathologic." Also, her gait and station were normal and she could heel to toe walk without difficulty. She had some degenerative changes in her spine but they were mostly mild or very mild. Dr. Chaudhari thought her depression was her most severe condition. Thus, the ALJ was also correct in finding that there was little or nothing by way of reports or findings to support Dr. Harvey's views. The only detailed statement of the reasons for plaintiff's alleged disability appear to have come from her recitations of her own situation and symptoms in office notes which clearly were reported by the plaintiff and not observed or verified by Dr. Harvey. (E.g., Tr. 520-21). The ALJ's observation concerning the relatively small number of times that Dr. Harvey saw plaintiff is also borne out by the record.

It appears that the ALJ took into account the various factors set forth in §404.153-27(d) for evaluating a treating physician's opinion, and plaintiff does not argue otherwise. When those factors are discussed, and when the record supports the ALJ's finding that the factors allow a treating source's statements to be discounted, the Court is not ordinarily entitled to second-guess that finding. See, e.g., Rabbers v. Comm'r of Social Security, 582 F.3d 647, 660 (6th Cir. 2009)(holding that an ALJ was entitled to discount a treating source opinion if it

8

was not supported by records and treatment notes and based on relatively few instances of treatment); Collins v. Comm'r of Social Security, 2008 WL 2302695, *6 (S.D. Ohio May 30, 2008)(when reasons given for discounting opinion of treating source are supported by the record, decision to discount that opinion are within the ALJ's "'zone of choice'").

*Report and Recommendation*, Doc. 18, at 14-15.

Plaintiff argues that the ALJ's decision to discount Dr. Harvey's opinion was, in part, based on the ALJ's improper assessment of the credibility of her subjective complaints, which clearly formed the basis for much if not all of Dr. Harvey's assessment.  However, the Court has found nothing improper in the way in which the ALJ evaluated her credibility, so that argument does not carry much weight.  Otherwise, the Court agrees with the quoted analysis from the Report and Recommendation and finds, independently, that the ALJ did not roam outside his permitted "zone of choice" in crediting other medical opinions over Dr. Harvey's.

Plaintiff also criticizes the ALJ's handling of Dr. Meagher's reports.  As the ALJ noted, two of the letters from Dr. Meagher found in the record state "that he found no evidence of any instability in the claimant's cervical spine, no evidence of nerve or spinal canal compression, and no severe radicular symptoms, and opined that he did not feel that surgical intervention on her neck had anything to offer the claimant."  Tr. 17.  Other letters included in his records, all written to Dr. Irwin - on whose opinion the ALJ relied - show that Dr. Meagher was primarily concerned about whether there were any surgical options available to treat Plaintiff's neck, back and hip pain.  In 2007, he suspected some unrecognized problem causing pain in Plaintiff's hips and knees, *see* Tr. 346, but studies ruled out any major hip joint problem from a bony standpoint. He recommended a follow-up appointment if Plaintiff continued to experience leg and back pain, but his notes from 2008 show that she had improved until a recent fall.  At that point, she was

having more neck pain.  She did not, however, have any severe radicular symptoms or severe arm weakness, so that surgery had little to offer her.  His notes mention diagnoses (by others) of fibromyalgia and depression, but he did not evaluate those impairments nor did he suggest any functional limitations.  It is hard to see how these records provide any added support for Dr. Harvey's assessment.  Dr. Irwin did not seem to find them evidence of disabling symptoms  and the ALJ did not ignore them.  The Court finds no error in the way this evidence was evaluated, nor any basis for a remand for further consideration of it.  Thus, Plaintiff's second objection is without merit.

V.

For theses reasons, Plaintiff's Objections (Doc. 19) are **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 18).  Plaintiff's statement of specific errors (Doc. 14) is **OVERRULED** and this case is **DISMISSED**.  The Clerk is directed to enter judgment in favor of the defendant.

**IT IS SO ORDERED.**

      **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**DATED:  March 4, 2013**